# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

TERRY MARTIN, CALLMIE DENNIS,
SHONTELLE MOORE, BRENDA SHORT
AND DONNA BARRETT-HARRIS,

On behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.

**Memorandum of Law & Order**
Civil File No. 09-01578 (MJD/AJB)

RELIASTAR LIFE INSURANCE COMPANY,
RELIASTAR LIFE INSURANCE COMPANY
OF NEW YORK, ING AMERICA EQUITIES,
INC., ING NORTH AMERICA INSURANCE
CORPORATION, ING PAYROLL MANAGEMENT,
INC., ING U.S. FINANCIAL SERVICES, ING
INVESTMENT MANAGEMENT COMPANY,
LION CONNECTICUT HOLDINGS, INC., ING
AMERICA INSURANCE HOLDINGS, INC.,

      Defendants.

---

Leslie L. Lienemann, Celeste E. Culberth, Culberth & Lienemann, LLP, Susan E. Stokes, Farmers Legal Action Group, Inc., Counsel for Plaintiffs.

Jay Cohen, Brad S. Karp, Daniel J. Toal, Maria H. Keane, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison LLP, Joseph G. Schmitt, Nilan Johnson Lewis, P.A., Counsel for Defendants.

---

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss [Docket No. 34]. On August 17, 2009, Plaintiffs filed their Second Amended Complaint ("SAC") [Docket No. 29], alleging Racial Discrimination and Retaliation in violation of (1) the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.*; (2) the Minneapolis Civil Rights Ordinance ("MCRO"), Minneapolis, Minn., Code of Ordinances § 363A.01 *et seq.*; (3) 42 U.S.C. § 1981; and (4) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Based on the files, records and proceedings in this matter, the Court now grants in part and denies in part Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND

### A. Parties

Plaintiffs Terry Martin, Callmie Dennis, Shontelle Moore, Brenda Short and Donna Harris-Barrett represent a nationwide class of African American current and former employees of Defendants. (SAC ¶¶ 14-15, 23-24, 31-32, 43-44, 55-56.) Defendants agree that the named Plaintiffs were employed by either Defendant ReliaStar Life Insurance Company ("ReliaStar") or Defendant ReliaStar Life Insurance Company of New York ("ReliaStar New York"). (Defs.' Mem. in Supp. of Mot. to Dismiss 20, n.11.) Martin was employed from 2000 to

2007, Dennis from 1999 to 2007, Moore from 2002 to 2006, Short from 2005 to 2007, and Harris-Barrett from 1985 to 2007. (SAC ¶¶ 15, 17, 24, 30, 32, 42, 44, 54, 56, 60.)

Defendant ING America Insurance Holdings, Inc. ("ING America") is a Delaware Corporation, with its principal place of business in Atlanta, Georgia. (Id. ¶¶ 12-13; Pendergrass Aff. ¶ 23.) ING America is a direct subsidiary of ING Groep N.V., which is not listed as a Defendant in this case. (See Culberth Aff. Ex. 1.) The other Defendants in this matter are direct or indirect subsidiaries of ING Americas. (See SAC ¶¶ 11-12; Pendergrass Aff. ¶ 4.) Defendant Lion Connecticut Holdings, Inc. ("Lion Holdings") is a Connecticut corporation whose corporate secretary is based out of Minneapolis, Minnesota. (SAC ¶ 11; Pendergrass Aff. ¶ 13; Lienemann Decl. Ex. 24.) Defendant ReliaStar is a Minnesota Corporation and a direct subsidiary of Lion Holdings. (SAC ¶¶ 4, 11; Pendergrass Aff. ¶ 13.) Defendant ReliaStar New York is a New York corporation and a direct subsidiary of ReliaStar. (SAC ¶ 5.) Defendant ING Payroll Management, Inc. ("ING Payroll") is a Delaware corporation with a principal place of business in Atlanta, Georgia. (Id. ¶ 8; Pendergrass Aff. ¶ 4.) Defendant ING North America Insurance Corporation ("ING NAIC") is a Delaware corporation with a registered business address in Minneapolis,

Minnesota. (SAC ¶ 7.) Defendant ING America Equities, Inc. is a Colorado corporation with a registered business address in Minneapolis, Minnesota. (Id. ¶ 6.) Defendant ING Investment Management is a Connecticut corporation with a registered business address in St. Paul, Minnesota. (Id. ¶ 10.) Finally, Plaintiffs have not alleged a state of incorporation for ING U.S. Financial Services ("ING Financial") and Defendants maintain ING Financial is not a separate legal entity. (Defs.' Mem. at 2, n.1.) Plaintiffs have only introduced evidence indicating that ING Financial was an operating unit of ING America. (Short Decl. Ex. 2; Moore Decl. Ex. 9; Martin Decl. Ex. 2; Dennis Decl. Ex. 2; Lienemann Decl. Exs. 13, 21.)

### B. Defendants as Joint Employer

The SAC does not specify which Defendant employed the named Plaintiffs. Instead, it characterizes Defendants as a single employer called "ING." (SAC ¶ 14.) It alleges that "Defendants collectively have centralized operations at ING," and jointly employed the named Plaintiffs in Minnesota. (Id. ¶¶ 13, 14.) Pursuant to Defendants' Motion to Dismiss for lack of personal jurisdiction, the parties offer supporting declarations and exhibits that highlight some of Defendants' integrated business operations. (See Dennis Decl.; Martin Decl.; Moore Decl.; Short Decl.; Harris-Barrett Decl.; Lienemann Decl.; Culberth Decl.; Pendergrass Aff.)

According to these submissions, ING America, ING Payroll and Lion Holdings all have the same vice president and treasurer. (Pendergrass Aff. ¶ 3.) Moreover, Defendants collectively manage a single ING website, wherein they advertise the interrelatedness of their corporate subsidiaries and refer to ReliaStar as a Minnesota location of ING. (Lienemann Decl. Exs. 4-5, 7-8, 11.) In fact, Defendants advertise ReliaStar as ING Insurance Agency, Inc. in the Minneapolis/St. Paul phone book. (Lienemann Decl. Ex. 15.) Defendants also use an integrated ING email system and assigned Plaintiff Dennis an ING email addresses during her employment at ReliaStar. (Dennis Decl. Exs. 6, 14-15.)

Furthermore, Defendant ING Payroll acts as a consolidated paymaster of payroll taxes for all ING U.S. insurance companies and is the vehicle for making federal and state withholding deposits for such companies. (Pendergrass Aff. ¶ 6.) Similarly, ING Payroll joined Lion Holdings and ING Americas in filing Unitary Minnesota Franchise Income Tax Returns. (Id. ¶¶ 10, 20, 29.) Finally, ING Payroll controlled Defendants payroll management and was listed as Plaintiffs' employer on their W-2 tax forms. (Dennis Decl. Ex. 13; Martin Decl. Ex. 8; Moore Decl. Exs. 6-9; Short Decl. Ex. 3.)

These submissions also present evidence of ING centralized employment relations. For instance, Plaintiff Martin was presented with an Employee

Handbook Acknowledgment Form which explained the policies governing her employment with "ING." (Martin Decl. Ex. 1.) The form explained that these employment polices could only be modified by the CEO of ING Americas. (Id.) Additionally, Plaintiffs' received integrated employment forms, such as performance appraisal forms, offer letters, employee identification badges, and employee recognition forms, all of which contained the ING name and logo. (Dennis Decl. Exs. 5, 8-9, 11-12; Martin Decl. Exs. 1-4; Short Decl. Ex. 1; Harris-Barrett Decl. Exs. 1-2.) Defendants also maintained a centralized ING diversity policy and created ING minority affinity groups which included employees of ReliaStar and ReliaStar New York as members. (Lienemann Decl. Exs. 6, 9; Dennis Decl. Ex. 1; Moore Decl. ¶¶ 3-6.) Furthermore, Defendants integrated the processes for handling internal promotion requests and employee complaint procedures. (See Dennis Decl. ¶ 8, Exs. 7, 14-15; Moore Decl. ¶¶ 2-6, Ex. 1; Short Decl. ¶¶ 2-6.) In particular, Plaintiff Dennis' application for a Disability Claim Supervisor Promotion was coordinated through ING NAIC, and Plaintiffs' discriminatory treatment claims were directed to ING Human Resources personnel in Colorado, Georgia, and Pennsylvania. (Id.) Finally, Defendants offered integrated ING employee benefits, which included ING life insurance, health insurance, retirement plans and stock options. (Dennis Decl. Exs. 17-19;

Martin Decl. Ex. 5; Moore Decl. Exs. 10-11.) Plaintiff Martin was even offered an

ING Severance Pay Plan at the conclusion of her employment. (Martin Decl. Exs.

6-7.) In order to receive severance benefits under the severance plan, Martin was

asked to release all claims against "the Company," which was defined as ING

America, its parents, subsidiaries, affiliated companies, officers, directors and

employees. (Id. Ex. 6.)

### C. The Dispute

The SAC makes several allegations of racial discrimination. First, it alleges

that ING had a pattern and practice of paying African American employees less

than their white counterparts. (SAC ¶ 20.) According to Plaintiffs, ING used its

performance appraisal systems as a way to ensure that African American

employees remained at a lower salary rate. (Id. ¶ 20.) In fact, each Plaintiff

insists that their equally qualified or even less qualified white coworkers earned

more money than them. (Id. ¶¶ 20, 27, 41, 53, 58.) One Plaintiff also claims that

she was denied the opportunity to earn overtime pay even though her white

coworkers worked overtime on a weekly basis. (Id. ¶ 47.)

The SAC also alleges that African American employees had to use the job

posting process to apply for transfers and promotions, whereas white employees

did not. (Id. ¶ 19.) As a result, Plaintiffs claim they applied for several

promotions within ING but were passed over for less qualified white employees. (SAC ¶¶ 19, 25-26, 33-35, 45, 59.)  Some positions were even filled by white employees without ING ever posting them, thereby making it impossible for Plaintiffs to apply.  (Id. ¶ 26.)

Finally, the SAC alleges that ING retaliated against those Plaintiffs who complained about racial discrimination.  (Id. ¶ 21.)  The alleged retaliation took several different forms, with the most egregious being the firing of Plaintiff Martin.  (SAC ¶¶ 16-17, 22.)  In other instances, Plaintiffs claim that ING management overloaded them with work, refused to assign them any work, unjustly criticized their job performance, or even sabotaged their completed work.  (Id. ¶¶ 16-18, 21-22, 28-29, 36-40, 48-52.)  According to the SAC, ING used these methods to force Plaintiffs to quit.  (Id. ¶ 64.)  On one occasion, a member from ING management allegedly even told Plaintiff Dennis that "ING [wasn't] the place for [her]."  (Id. ¶ 29.)  Aside from Martin, who was fired, the remaining named Plaintiffs claim that they constructively terminated their positions with ING.  (Id. ¶¶ 30, 42, 54, 60.)  The named Plaintiffs do not currently seek reemployment with any of the Defendants.  (See Id. at 26, ¶ D (specifying that only class members seek an injunction to be restored to the positions and compensation at ING that they would have achieved absent discrimination).)

### D. Procedural Background

On June 22, 2009, Plaintiffs filed a Complaint [Docket No. 1] against seven of the current Defendants and certain additional affiliated companies, alleging racial discrimination and retaliation in violation of the MHRA, the MCRO and 42 U.S.C. § 1981. On July 14, 2009, Plaintiffs filed an Amended Complaint [Docket No. 4] and added Title VII claims of racial discrimination and reprisal. On August 17, 2009, Plaintiffs filed the SAC [Docket No. 29], adding ReliaStar New York and ING Investment Management Company as Defendants, and removing certain previously named parties. Currently, Plaintiffs allege eight counts of Racial Discrimination and Retaliation in violation of 42 U.S.C. § 1981, Title VII, the MHRA, and the MCRO.

On September 11, 2009, Defendants filed this Motion to Dismiss [Docket No. 34]. Defendants request that all claims be dismissed against ING America, ING Payroll, and Lion Holdings for lack of personal jurisdiction. Defendants further request that all claims be dismissed as to all Defendants for failure to state a claim upon which relief can be granted. Finally, Defendants request that Plaintiffs' request for injunctive relief be dismissed for lack of subject matter jurisdiction. For the reasons stated below, the Court now grants in part and denies in part Defendants' Motion to Dismiss.

## III.  DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for want of personal jurisdiction, the Court may consider matters outside the pleadings by affidavits or otherwise.  <u>Stevens v. Redwing</u>, 146 F.3d 538, 543 (8th Cir. 1998) (citations omitted).  Although the plaintiff has the ultimate burden of proof on the issue of personal jurisdiction,

> [t]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction.  If the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

<u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1387 (8th Cir. 1991) (internal citations omitted).

"A two-step inquiry is employed when determining whether a federal court has jurisdiction over a non-resident party: (1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process."  <u>Soo Line R.R. Co. v Hawker Siddeley Can., Inc.</u>, 950 F.2d 526, 528 (8th Cir. 1991) (internal quotation omitted).  "The Minnesota long-arm statute extends jurisdiction to the

fullest extent permitted by the due process clause." <u>Id</u>. (citation omitted). "Thus, the Court need only decide whether personal jurisdiction is consistent with federal due process." <u>Johnson v. Welsch Equip., Inc.</u>, 518 F.Supp. 2d 1080, 1087 (D. Minn. 2007). The Eighth Circuit has further elaborated:

> The due process clause requires there be minimum contacts between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

<u>Soo Line R.R. Co.</u>, 950 F.2d at 528-29 (internal citations omitted).

The Court examines five factors to determine whether the exercise of jurisdiction comports with due process:

> (1) the nature and quality of contacts with the forum state;
> (2) the quantity of contacts with the forum;
> (3) the relation of the cause of action to these contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

<u>Stanton v. St. Jude Med., Inc.</u>, 340 F.3d 690, 694 (8th Cir. 2003) (citation omitted).

The first three considerations are primary factors, whereas the latter two

considerations are secondary factors.  <u>Id.</u>

The Court may exercise either general or specific personal jurisdiction over

a party.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-415

(1984).  According to the Eighth Circuit:

> A state may exercise general jurisdiction if a defendant has carried
> on in the forum state a continuous and systematic, even if limited,
> part of its general business; in such circumstances the alleged injury
> need not have any connection with the forum state.  The plaintiff
> must make a prima facie showing, however, that the defendant's
> contacts were not 'random,' 'fortuitous,' or 'attenuated.'  Specific
> jurisdiction on the other hand is appropriate only if the injury giving
> rise to the lawsuit occurred within or had some connection to the
> forum state, meaning that the defendant purposely directed its
> activities at the forum state and the claim arose out of or relates to
> those activities.

<u>Steinbuch v. Cutler</u>, 518 F.3d 580, 586 (8th Cir. 2008) (citations omitted).  In this

case, Plaintiffs argue that ING America, ING Payroll, and Lion Holdings are

subject to both specific and general jurisdiction in Minnesota.

### 1.  Primary Considerations

Defendants ING America, ING, Payroll, and Lion Holdings contend that

they have no connection to Minnesota and should therefore not be subject to

personal jurisdiction here.  Plaintiffs respond arguing that these Defendants are integrated components of a collective entity that employed them in Minnesota.

The Eighth Circuit has held that "[a] corporation is not doing business in a state merely by the presence of its wholly owned subsidiary."  Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003) (citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333 (1925)).  Nevertheless, the court has found that "the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation."  Epps, 327 F.3d at 649.  "The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute."  Id.  The court has gone on to hold that "neither physical presence [in the forum state] nor piercing [the subsidiary's] corporate veil is required to establish the minimum contacts necessary for the exercise of personal jurisdiction."  Anderson v. Dassault Aviation, 361 F.3d 449, 452 (8th Cir. 2004).  In Anderson, the court exercised personal jurisdiction over a parent company that was aware of and benefited from its subsidiary's substantial operations in the forum state.  Id. at 453.  The court noted that the parent company had a similar name and logo as its

subsidiary, shared some of the same directors, and sponsored publications which used a forum state location as one of its points of contact.  Id.

Defendants insist, however, that the Eighth Circuit has never created a joint employer theory of personal jurisdiction.  Nevertheless, the court has ruled that a parent company may be liable in an employment lawsuit involving its subsidiary's employee.  Brown v. Fred's Inc., 494 F.3d 736, 739 (8th Cir. 2007).  Under this theory, "[t]here is a strong presumption that a parent company is not the employer of its subsidiary's employees."  Id. (citations omitted).  For liability to extend to the parent company, it must be true that "(a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer, or (b) the parent company is linked to the alleged discriminatory action because it controls individual employment decisions."  Id. (internal citations omitted).

The Eighth Circuit considers four factors to assess whether separate companies act as one employer for discrimination cases brought under Title VII: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.  Baker v. Stuart Broad. Co., 560 F.2d 389, 392 (8th Cir. 1977); see also Sandoval v. American Bldg. Maint. Indus., Inc., 578 F.3d. 787, 796 (8th Cir. 2009).  This Court now

14

follows the United States District Court for the District of Connecticut and extends this theory of liability to the context of personal jurisdiction. See Hajela v. ING Groep N.V. et al., 582 F. Supp. 2d 227, 236-37 (D. Conn. 2008). Hajela involved a wrongful termination and retaliation lawsuit against ING NAIC and its foreign parent company, ING Groep N.V. Id. The court held that the plaintiff met his *prima facie* showing of personal jurisdiction by offering enough evidence of the ING affiliates jointly employing him in Connecticut. Id. at 238. The court specifically highlighted how ING Groep N.V. controlled ING NAIC's operations and employment relations, how the companies used an integrated e-mail system, and how ING NAIC's employment materials contained the ING name and logo. Id. at 237.

As a result, the Court considers the four factors set forth in Baker to determine if ING America, ING Payroll, and Lion Holdings were members of a collective enterprise that employed Plaintiffs in Minnesota. The Eighth Circuit has found that the following evidence is relevant to a determination of joint employer liability: defendants' published statements; involvement by the parent in several areas of the subsidiary's operations under a Service Agreement (including legal services, accounting services, administrative services, electronic services, employee benefits, human resources, insurance, treasury services);

centralized control of labor and human resources; common officers. <u>See</u>

<u>Sandoval</u>, 578 F.3d. at 796 (considering the above evidence).

### a.  Interrelated Operations

The parties' submissions tend to show that that ING America, ING Payroll,

and Lion Holdings held themselves out as members of a unified enterprise called

ING.  For example, ING's public website advertises interrelated operations

among the ING entities and refers to ReliaStar as ING's Minnesota location.

Additionally, Defendants shared an integrated e-mail system which assigned

ING based e-mail addresses to employees of ReliaStar.  Finally, Defendants

acknowledge that ING Payroll Management serves as a consolidated paymaster

for payroll taxes for ING U.S. insurance companies, and as such, is the vehicle for

making federal and state withholding deposits for such companies.

### b.  Collective Management

The submissions also illustrate common management over the Defendant

ING entities.  For instance, Defendants acknowledge that ING America, ING

Payroll and Lion Holdings share the same Vice President and Treasurer.  They

also jointly file Unitary Minnesota Franchise Income Tax Returns which state that

"a business is presumed to be unitary whenever there is unity of ownership,

operation and use."  (Lienemann Decl. Ex. 14.)  Although the fact that these

Defendants filed a unitary tax return is not conclusive on the question of personal jurisdiction, it tends to show that Defendants were collectively managed as a single entity.  Finally, despite being technically employed by ReliaStar, Plaintiff Martin received an ING Employee Handbook that informed her that only the CEO of ING America could alter her at-will employment status or policies governing her employment.

### c.  Centralized Control of Labor Relations

Most importantly, the evidence suggests that ING centralized control over all employment related matters.  Plaintiffs received an ING Employment Handbook and ING performance reviews.  They were offered ING employment benefits.  ING Payroll was listed as their employer on all of their W-2 tax forms.  They were subject to an ING diversity policy and could join centralized ING minority affinity groups.  They had to use the ING process for internal promotion requests and employee complaint procedures.  Finally, Plaintiff Martin received an ING Severance Pay Plan at the time of her firing.  This pay plan specified that she was being terminated from the entire ING enterprise and not just from ReliaStar.  The Court concludes that this evidence illustrates how the ING subsidiaries acted as one entity when controlling employment relations.

### d.  Common Ownership or Financial Control

As admitted in Defendant's own Corporate Disclosure Statements, each Defendant is a direct or indirect wholly owned subsidiary of ING America. As a result, this evidence demonstrates that Defendants were all subject to common ownership.

The Court concludes that Plaintiffs have, without the benefit of discovery, made a prima facie showing that Defendants ING America, ING Payroll and Lion Holdings were integrated unit of a joint Minnesota employer. Moreover, the Court finds that these Defendants' contacts with Minnesota are substantially related to Plaintiffs' claims of employment discrimination. Consequently, the Court concludes that the primary considerations outlined in <u>Stanton v. St. Jude</u> warrant exercising personal jurisdiction over these parties. 340 F.3d at 694.

### 2. Secondary Considerations

The Court now considers Minnesota's interest in providing a forum for its residents and the convenience of this forum to the parties. The Eighth Circuit has held that "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents." <u>Northurm King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.</u>, 51 F.3d 1383, 1389 (8th Cir. 1995). Because the named Plaintiffs are Minnesota residents, this factor weighs in favor of exercising personal jurisdiction over Defendants.

Furthermore, where witnesses are in both Minnesota and a foreign state, the convenience of the parties favors neither side. Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519 (8th Cir. 1996). As a result, the Court will not decline jurisdiction merely because some Defense witnesses are based out of another state. As a result, this factor does not weigh into the Court's determination of personal jurisdiction.

After considering the facts in a light most favorable to Plaintiffs and resolving all factual conflicts in their favor, the Court determines that Plaintiffs have met their prima facie showing of personal jurisdiction. Plaintiffs have provided enough evidence to indicate that ING America, ING Payroll, and Lion Holdings were members of a joint ING enterprise that conducted business in Minnesota and employed Plaintiffs in Minnesota.

### B. Motion to Dismiss for Failure to State a Claim for Relief.

Defendants also move to dismiss the SAC for failure to state a claim upon which relief can be granted. Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). This pleading requirement does not require detailed factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  However, a complaint that states "naked assertion[s]" lacking any "further factual enhancement" is insufficient. Twombly, 550 U.S. at 557.

## 1. Factual Allegations Concerning Employment

To state a claim for employment discrimination and retaliation under Title VII, the MHRA or the MCRO, Plaintiffs must allege an employer/employee relationship.  See 42 U.S.C. § 2000e-2(a) (2008); Minn. Stat. §§ 363A.08 subd.2 & 363A.15 (2004); Minneapolis, Minn. Code of Ordinances §§ 139.40(b), 139.40(m). Similarly, section 1981 claims must allege the existence of a contract with which the defendant interfered.  42 U.S.C. § 1981; Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006) ("Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights." (internal quotation omitted)).  Defendants concede that there was an employment relationship and employment contract between Plaintiffs and ReliaStar or ReliaStar New York.  Nevertheless, Defendants argue that the SAC has not adequately alleged the existence of an employment relationship or an employment contract with the other Defendants.

When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court looks only to the factual allegations in the pleadings. Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 959 (D.Minn. 2000). "Any allegations made in subsequent legal memoranda cannot correct inadequacies within a complaint." Id. (citing Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir.1989)). "To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." Tuttle, 118 F. Supp. 2d at 959 (citations omitted).

As noted above, the SAC merely alleges that Defendants have centralized operations at ING and jointly employed Plaintiffs in Minnesota. In light of the strong presumption dictated Brown that a parent company is not the employer of its subsidiary's employees, 494 F.3d at 739, the Court concludes that Plaintiffs must make additional factual allegations to support their legal conclusion of joint employment. Instead of dismissing Plaintiffs' discrimination claims outright, however, the Court will give Plaintiffs thirty days leave to amend the SAC so that it fulfills the minimum pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

### 2. Factual Allegations Concerning Discrimination

Plaintiffs' employment discrimination claims are based on allegations of disparate treatment. To state a disparate treatment claim, a plaintiff must allege that: "(1) she was a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination, as similarly situated employees, who are not members of the protected group, were treated differently." Jacob-Mua v. Veneman, 289 F.3d 517, 521-22 (8th Cir. 2002); see Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009) ("We apply the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981.").

Defendants argue that the SAC should be dismissed as to all Defendants for failure to adequately allege a prima facie claim of discrimination. Defendants attack the SAC, characterizing it as replete with conclusory allegations and no factual specificity. Specifically, Defendants assert that the SAC (1) provides no notice as to who was purportedly involved in the alleged discrimination; (2) fails to allege the identities of white employees who were allegedly treated more favorably or circumstances surrounding their treatment; and (3) fails to allege facts as to when the allegedly discriminatory acts occurred and instead only notes the start and end dates of Plaintiffs' employment.

The United States Supreme Court has held, however, that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-12 (2002). The Court reiterated this position in <u>Twombly</u>, holding that it does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. 554, 569-570 (reaffirming opinion in <u>Swierkiewicz</u>). As a result, this Court believes that "[a]n employment discrimination plaintiff need only give the defendant 'fair notice' of what the plaintiff's claims are and the grounds upon which they rest." <u>Brewer v. Mo. Dep't of Corrections</u>, No. 4:08CV1883 CEJ, 2009 WL 1797877 at *2 (E.D. Mo. June 24, 2009) (citing <u>Swierkiewicz</u>, 534 U.S. at 514).

In this case, Plaintiffs allege multiple instances of discrimination on account of their status as African Americans. Unlike their white coworkers, Plaintiffs claim that they received lower pay, had unequal access to promotion opportunities, were overburdened with excess work, were subject to unfair criticism of their work product, and were refused overtime opportunities. These are not conclusory statements, but rather assertions of fact that put the Defendants on fair notice of the basis for this lawsuit. Moreover, due to the fact that Plaintiffs no longer work for any ING affiliate, they lack access to personnel

records that would permit them to provide a more specific factual account of the purported discrimination.  As a result, the Court denies Defendants' motion to dismiss on this ground.

### 3. Plaintiffs' Allegations of Reprisal

Similarly, Defendants argue that the SAC's allegations of retaliation and reprisal should be dismissed under Rule 12(b)(6) for failure to state a claim.  To establish a prima facie case of retaliation, a plaintiff must allege that: "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." Wells v. SCI Mgmt. L.P., 469 F.3d 697, 702 (8th Cir. 2006) (citing Cheshewalla v Rand & Son. Const. Co., 415 F.3d 847, 851 (8th Cir. 2005).

Defendants once again argue that the statements made in the SAC are merely conclusory and do not plead sufficient facts to support claims of retaliation.  The SAC, however, describes specific instances when Plaintiffs complained about discrimination and were met with different forms of retaliation by their management personnel.  The variety of alleged retaliation includes significant increases workload, significant decreases in workload, unjust performance reviews, sabotaged work product, and even job termination.  The

Court determines that these factual assertions are sufficient to provide fair notice of the background to Plaintiffs' claims of retaliation and reprisal.

### C. Motion to Dismiss for Lack of Standing

Defendants next argue that this Court does not have subject matter jurisdiction over Plaintiffs' claims for injunctive relief because Plaintiffs have failed to plead facts demonstrating their standing to seek such relief.

"A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite." Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (citations omitted). The Eighth Circuit has explained:

> [t]o establish standing, a plaintiff is required to show that he or she had 'suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' Second, the injury must be traceable to the defendant's challenged action. Third, it must be 'likely' rather than 'speculative' that a favorable decision will redress the injury.

Id. (quoting South Dakota Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 591 (8th Cir. 2003).

In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the

motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted).

Here, the Court is presented with a facial challenge as Defendants do not contest the validity of the SAC's factual allegations for the purpose of their standing argument. Defendants contend that because the named Plaintiffs are no longer employed by an ING entity and are not seeking reemployment, they cannot suffer any real or immediate injury under policies applicable only to current employees. In response, Plaintiffs argue that standing may be addressed only on a motion for class certification. Plaintiffs, however, do not provide any supporting authority for this proposition.

Eighth Circuit law permits the Court to address standing on a motion to dismiss. Hastings v. Wilson, 516 F.3d 1055, 1060-61 (8th Cir. 2008) (affirming dismissal for lack of standing, notwithstanding the plaintiffs' argument that unnamed class members might have standing). The Eighth Circuit has found that ex-employee plaintiffs lack standing for injunctive relief when they do not show a "clear intention of seeking reinstatement." Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002).

When requesting relief throughout the SAC, the named Plaintiffs distinguish themselves from the potential class members.  With respect to the request for reinstatement, however, the SAC only requests "[t]hat an injunction be issued to restore class members to the positions and compensation at ING that they would have achieved absent discrimination."  (SAC 26, ¶ D.)  Because this language omits specific mention of Plaintiffs' desire to return to work at ING, the Court concludes that Plaintiffs have failed to show a clear intention of seeking reinstatement.  Defendants' current employment practices therefore do not present a credible threat of recurring harm to Plaintiffs.  See, e.g., Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002) ("Because Faibisch has not indicated that her job at the Center still exists, or that if it does exist Ysseldike would be her supervisor, she cannot establish a real and immediate threat of injury.").  As a result, the Court dismisses Plaintiffs' request for injunctive relief.

**D. ING Financial**

Finally, Defendants contend that ING Financial is not a legal entity and should therefore be dismissed from this lawsuit.  Although the SAC names ING Financial as a Defendant, it fails to allege a state of incorporation.  (See SAC ¶ 9.)  "[I]ncorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural

individuals who created it, who own it, or whom it employs." <u>Cedric Kushner</u> <u>Promotions, Ltd. V. King</u>, 533 U.S. 158, 163 (2001). Furthermore, Plaintiffs fail to respond to Defendants' claim that ING Financial is not a legal entity. Instead, Plaintiffs provide submissions indicating that ING Financial is merely an operating unit of ING. As a result, the Court dismisses ING Financial.

## IV.    CONCLUSION & ORDER

In conclusion, the Court finds that Plaintiffs have made a prima facie showing of personal jurisdiction over Defendants ING America, ING Payroll, and Lion Holdings. Nevertheless, Plaintiffs have failed to properly allege an employment relationship and employment contract with each Defendant. Because Defendants have not contested whether Plaintiffs were employed by ReliaStar or ReliaStar New York, the Court grants Plaintiffs 30 days leave to amend the SAC to include specific allegations of joint employment for the remaining Defendants.

As to ReliaStar and ReliaStar New York, the Court finds that Plaintiffs have alleged sufficient facts to support claims of employment discrimination and retaliation. Nevertheless, because Plaintiffs have failed to state an interest in being reinstated as employees of ReliaStar or ReliaStar New York, the Court dismisses Plaintiffs' prayer for injunctive relief.

Finally, because Plaintiffs have failed to show that Defendant ING Financial is a legal entity, the Court dismisses ING Financial from this action.

Accordingly, based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 34] is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Court has personal jurisdiction over Defendants ING America, ING Payroll, and Lion Holdings.

2. The Court grants Plaintiffs 30 days leave from the date of this order to file an amended complaint that sufficiently pleads an employment relationship or employment contract with Defendants ING America, ING NAIC, ING America Equities, Lion Holdings, ING Payroll, and ING Investment Management. If Plaintiffs fail to amend their pleading in the allotted time, the Court will dismiss these Defendants without prejudice.

3. The Court dismisses without prejudice Plaintiffs' prayer for injunctive relief against all Defendants.

4. The Court dismisses Defendant ING Financial Services without prejudice.

Date: May 7, 2010                         s/ Michael J. Davis_____
                                          Chief Judge Michael J. Davis
                                          United States District Court